UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER HOLLY,<br><br>   Plaintiff,<br><br> v.<br><br>SALLY JEWELL,<br><br>   Defendant. | Case No. 16-cv-00011-DMR<br><br>**ORDER GRANTING PARTIAL MOTION TO DISMISS**<br><br>Re: Dkt. No. 19 |

  Plaintiff Roger Holly is an African American man and a licensed minister in the Baptist Church who worked for the National Park Service until his termination on March 10, 2014. Plaintiff's First Amended Complaint ("FAC") [Docket No. 16] alleges four claims for relief: 1) religious and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII"); 2) retaliation on the basis of religion and race in violation of Title VII; 3) violation of his First Amendment rights to free speech, free exercise of religion, and freedom of association; and 4) violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000(bb) *et seq.* Plaintiff brings this action against Defendant Sally Jewell in her official capacity as the Secretary of the United States Department of the Interior.

  Defendant now moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiff's First Amendment and RFRA claims. Defs.' Partial Motion to Dismiss ("MTD") [Docket No. 19]. Defendant argues that both claims are "preempted" by Title VII, which provides the sole remedy for discrimination in federal employment.[1]  *Id.*  Having considered the parties'

---

[1] Defendant describes this as a "preemption" issue. MTD at 7. This term has been used by some courts in similar circumstances. *See, e.g., Tagore v. United States*, No. CIV. A. H–09–0027, 2009 WL 2605310, at *10 (S.D. Tex. Aug. 21, 2009), *aff'd in part, rev'd in part by* 735 F.3d 324 (5th Cir. 2013); *Francis v. Ridge,* No. Civ. 2003/0039, 2005 WL 3747434, *3 (D.V.I. Dec. 27, 2005); *Dorsey v. Roche*, No. C 00–21070 JW, Docket No. 53 at ECF 13 (N.D. Cal. Oct. 1, 2002). Other courts use the term "subsumed." *See, e.g., Francis v. Mineta*, 505 F.3d 266, 270 (3d Cir. 2007).

1   briefs and oral argument, the court grants Defendant's motion.

## I.     FACTUAL BACKGROUND

The following facts are set forth in Plaintiff's FAC.  The court focuses on Plaintiff's allegations relating to his claims for religious discrimination and violation of his First Amendment rights.  It does not discuss allegations relating to race discrimination or retaliation, as those claims are not at issue in the present motion.

Plaintiff, an African American man, is a Baptist Christian and a gospel minister.  He worked at the San Francisco Maritime National Historic Park as a maintenance worker from May 2012 until his termination in March 2014.  In late November 2013, Plaintiff met with management officials.  Among other things, Plaintiff complained that he had been told that he could not "display" a Bible that he read on his breaks, although other employees were not questioned about the reading materials that they kept for their break times.  On November 23, 2013, while on a break and out of uniform, Plaintiff performed a baptism in the seashore adjoining the park.  On his next work day, Plaintiff's supervisor interrogated Plaintiff about the baptism, and questioned him extensively about his religion.  On January 28, 2014, Plaintiff's employer issued a Notice of Proposed Termination, followed by a termination decision on March 10, 2014.  The final agency decision noted that Plaintiff was terminated for performing a baptism at Aquatic Park.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation

---

This court joins yet other courts in describing the issue as whether Title VII provides the exclusive remedy for discrimination in federal employment.  *See, e.g.*, *Harrell v. Donahue*, 638 F.3d 975, 984 (8th Cir. 2011); *Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995); *Ethnic Emps. of Library of Cong. v. Boorstin*, 751 F.2d 1405, 1407 (D.C. Cir. 1985); *White v. Gen. Servs. Admin.*, 652 F.2d 913, 916 (9th Cir. 1981).

and quotation marks omitted).  When reviewing a 12(b)(1) motion, the court sculpts its approach according to whether the motion is "facial or factual."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  By contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.

Here, Defendant facially attacks Plaintiff's First Amendment and RFRA claims pursuant to Rule 12(b)(1), arguing that they should be dismissed because they are "preempted" by Title VII.

### B.     Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–200 (9th Cir. 2003).  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted).

### III.     ANALYSIS

Defendant argues that Plaintiff's First Amendment and RFRA claims assert religious discrimination in a federal workplace, and therefore should be dismissed because Title VII provides the exclusive remedy for discrimination in federal employment.  Defendant also argues that since she has been sued in her official capacity, she cannot be held vicariously liable for monetary damages resulting from constitutional violations allegedly committed by Plaintiff's supervisors.

### A.  Whether Defendant Properly Brings This Motion Under Rule 12(b)(1)

As an initial matter, Plaintiff asserts that Defendant's motion should be denied because she improperly brings it under Rule 12(b)(1) instead of Rule 12(b)(6).  According to Plaintiff,

3

Defendant's argument raises an issue of statutory standing (as opposed to Article III standing), which cannot be addressed through Rule 12(b)(1). Pl.'s Opposition ("Opp.") [Docket No. 20] at 2 (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011)). Defendant responds that Plaintiff confuses the issues of standing and preemption. Reply [Docket No. 21] at 6.

Although this dispute is styled as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the more appropriate analysis is under Rule 12(b)(6), which asks whether Plaintiff has failed to state a claim upon which relief can be granted. This case unequivocally raises federal questions which confer subject matter jurisdiction pursuant to 28 U.S.C. § 1331. In this motion, Defendant essentially argues that Plaintiff cannot state a claim for relief under RFRA or the First Amendment because Title VII prevents him from doing so. *See, e.g.*, *Francis v. Mineta*, 505 F.3d 266, 268 (3d Cir. 2007) (disagreeing with district court's dismissal of RFRA claim under Rule 12(b)(1) due to lack of subject matter jurisdiction, but affirming result pursuant to Rule 12(b)(6)).

### B.     Title VII and Federal Employment

#### 1.     General Principles

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex or national origin. 42 U.S.C. § 2000e *et seq*. As originally enacted, Title VII did not provide a remedy for federal employees alleging job-related discrimination. Congress filled this loophole through passage of section 2000e–16 as part of the 1972 amendments to Title VII. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825 (1976).

In *Brown*, the Supreme Court took up the question of whether the 1972 amendment "provides the exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. at 820–21. After review of the legislative history, *Brown* held that "the congressional intent in 1972 was to [create] an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Id.* at 829. The court then examined Title VII's statutory scheme as a whole, and found that "the structure of the 1972 amendment itself fully confirms the conclusion that Congress intended it to be exclusive and pre-emptive." *Id.*

*Brown* discussed other contexts in which the Supreme Court has held that "a precisely

4

drawn, detailed statute pre-empts more general remedies," including situations where the preempted statutory or tort remedies were found to undermine exhaustion requirements or narrowly tailored compensation schemes. *Id.* at 834–35. *Brown* concluded that "the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835; *see also White v. Gen. Servs. Admin.,* 652 F.2d 913, 916–17 (9th Cir. 1981) ("[A]llowing additional individual remedies would interfere with th[e] carefully devised scheme [of Title VII] by permitting circumvention of administrative remedies."); *Labtis v. Paulson*, No. C 07–3333 RS, 2008 WL 2705004, at *3 (N.D. Cal. July 9, 2008) (applying *Brown* and *White*; dismissing federal employee's tort and contract claims to the extent they challenged race, color, religion, sex, or national original discrimination).

In sum, to date, the Supreme Court and Ninth Circuit have held that Title VII provides the sole remedy for federal employees challenging workplace discrimination. The court now examines Plaintiff's First Amendment and RFRA claims to determine whether they must be dismissed in light of the Title VII "exclusive remedy" rule announced in *Brown*.

### 2.     **Plaintiff's First Amendment Claim**

Plaintiff's First Amendment claim alleges violation of his right to free exercise of religion, free speech, and freedom of association. FAC at ¶¶ 65–79. Plaintiff asserts that he exercised all of these rights by engaging in private religious conduct when he performed a baptism ceremony while on his lunch break. He contends that this act was the motivating factor in Defendant's decision to terminate him. Plaintiff further states that his employer severely intruded upon his First Amendment rights by prohibiting him from reading the Bible, discussing the Bible or its teachings, denigrating his religious activities, prohibiting interaction with others regarding religion on non-work time, and prohibiting him from engaging in religious activities on non-work time. *Id.*

As discussed above, Title VII provides the sole remedy for discrimination in federal employment. However, the Ninth Circuit has recognized that a plaintiff may bring separate tort or constitutional claims to the extent they fall outside this rubric. Thus, in *White*, the court noted that "Title VII does not preclude separate remedies for unconstitutional action other than

discrimination based on race, sex, religion or national origin." *White*, 652 F.2d at 917 (citing *Carlson v. Green*, 446 U.S. 14 (1980); *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)). Courts therefore must determine whether a plaintiff's constitutional or tort claims seek remedies for conduct other than discrimination in federal employment.

For example, in *Nolan v. Cleland*, 686 F.2d 806, 814–15 (9th Cir. 1982), the Ninth Circuit addressed whether, in addition to her Title VII claim for sex discrimination, a former federal employee could bring a constitutional claim for violation of due process based on allegations that her employer's deceit, coercion, and duress caused her involuntary resignation, which constituted a taking of a property interest. Although Nolan argued that her due process claim did not challenge workplace discrimination, the Ninth Circuit reasoned that the factual predicate for her constitutional claim was the same for her Title VII claim. As such, the Ninth Circuit applied *Brown* and found that the district court properly struck Nolan's constitutional claim because Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* (citing *Brown*, 425 U.S. at 835). *But see Arnold v. United States,* 816 F.2d 1306, 1311 (9th Cir. 1987) (remedy for unconstitutional actions other than employment discrimination not barred by Title VII, even if arising from same core of facts).

In *Otto v. Heckler,* 781 F.2d 754 (9th Cir.), *amended by* 802 F.2d 337 (9th Cir. 1986), the Ninth Circuit held that "torts which constitute 'highly personal violation[s] beyond the meaning of 'discrimination' [are] separately actionable." *Id.* at 756–57 (finding that plaintiff could not pursue certain alleged constitutional violations because they were actionable under Title VII; other allegations, although theoretically viable, did not did not amount to a violation of plaintiff's constitutional right to privacy); *see also Brock v. United States*, 64 F.3d 1421, 1423–24 (9th Cir. 1995) (torts relating to harms from sexual assault and rape may be actionable in addition to claims for Title VII sexual harassment, because rape and sexual assault involved highly personal violation beyond the meaning of discrimination.)

In *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985), the court affirmed application of the *Brown* rule to dismiss constitutional claims to the extent that they "simply restated claims of racial, ethnic or other discrimination cognizable under

Title VII." However, the court reversed the dismissal of constitutional claims that "could [not] be asserted in a Title VII lawsuit." *Id.* These included the allegation that the Library of Congress had punished the plaintiff organization and its members for their constitutionally protected criticisms of library policies, and had forced the organization to disclose its membership list as a condition of official recognition. *Id.* The D.C. Circuit found that these assertions fell outside the scope of Title VII, and that nothing in the history of Title VII suggested that Congress intended to prevent federal employees from suing their employers for constitutional violations against which Title VII provides no protection at all. *Id.*; *see also Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir. 1983) (Title VII does not foreclose federal employee's suit for deprivation of constitutionally protected property interest without due process based on employer's failure to follow its own affirmative action plans and regulations).

As currently pleaded, Plaintiff's First Amendment claim is for religious discrimination in employment, including his termination for performing a baptism. Plaintiff's constitutional claim is dismissed with prejudice to the extent that it challenges conduct protected by Title VII. However, the court grants leave to amend to the extent that Plaintiff can state a First Amendment violation that is distinct from his Title VII claim.

### 3. Plaintiff's RFRA Claim

Defendant argues that Plaintiff's RFRA claim must also be dismissed, because it challenges conduct for which Title VII provides the sole remedy pursuant to *Brown*. Plaintiff responds that *Brown* does not answer the question, because the *Brown* decision preceded the enactment of RFRA. Plaintiff argues that the Supreme Court's recent decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) suggests that Title VII is no longer the sole remedy for religious discrimination against federal employees, because RFRA provides an additional avenue of relief.

Congress enacted RFRA in 1993. Under *Brown,* Title VII unequivocally provided the exclusive remedy for claims of religious discrimination in federal employment prior to RFRA's passage. The question then becomes whether RFRA created an additional remedy for religious discrimination in federal employment. The answer begins with an examination of the

7

congressional intent expressed through RFRA.

The Religious Freedom Restoration Act provides that the Government cannot impose a law that substantially burdens a person's free exercise of religion unless the Government demonstrates that the law "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(b)(1)–(2). The statute "applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after [the passage of RFRA]." 42 U.S.C. § 2000bb–3(a).

Legislators introduced RFRA in direct response to the Supreme Court's decision in *Employment Division v. Smith,* 494 U.S. 872 (1990). *Smith* involved two Native American employees who were fired and denied unemployment benefits after they admitted to ingesting peyote as part of a religious ceremony. The state argued that it had a compelling interest in proscribing use of certain drugs pursuant to its controlled substance laws. The employees argued that the prohibition on use of sacramental peyote violated the free exercise clause of the First Amendment. Prior to *Smith,* the Court traditionally had held that any law that substantially burdened the free exercise of religion was constitutionally permissible only if the Government could establish a compelling interest. *See, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 214–15 (1972); *Sherbert v. Verner*, 374 U.S. 398, 406 (1963). In *Smith,* however, the Court concluded that a generally applicable law may survive constitutional scrutiny without demonstration of a compelling interest, even if the law substantially burdened the free exercise of religion. 494 U.S. at 884–85.

Congress promptly responded by overturning *Smith* through the passage of RFRA. This purpose is recognized in RFRA itself: "The Congress finds that in *Employment Division v. Smith*, 494 U.S. 872 (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(4)–(5). *See also* 42 U.S.C. § 2000bb(b) ("The purposes of this chapter are (1) to

restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government."); *see also* S. REP. No. 103–111, at 2, 8–9 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1893, 1897–98 (explaining the purpose of RFRA); H.R. REP. No. 103–88, at 1–5 (1993) (same).

Thus, the unambiguous intent of RFRA was to return to the pre-*Smith* status quo of requiring the Government to show a compelling interest for any law that substantially burdened the free exercise of religion. *Francis*, 505 F.3d at 270; *In re Young*, 141 F.3d 854, 857 (8th Cir. 1998).

Despite the seemingly broad language of RFRA, the legislative history reveals that Congress was careful to circumscribe its reach. Accordingly, in a section captioned "Other Areas of Law are Unaffected," the Senate Report states: "[a]lthough the purpose of this act is only to overturn the Supreme Court's decision in *Smith,* concerns have been raised that the act could have unintended consequences and unsettle other areas of law." S. REP. No. 103–111, at 12 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1879, 1902. The Report then discusses a number of areas that are not affected by RFRA, including Title VII. It explains: "[n]othing in this act shall be construed as affecting religious accommodation under title VII of the Civil Rights Act of 1964." *Id.* at 13, *reprinted in* 1993 U.S.C.C.A.N. at 1903. The House Report on RFRA contains nearly identical language. *See* H.R. REP. No. 103–88, at 7 (1993) ("Nothing in this bill shall be construed as affecting Title VII of the Civil Rights Act of 1964.").

Plaintiff is conspicuously silent on this legislative history. When pressed during oral argument, Plaintiff responded that the Senate Report states that RFRA should not be construed to affect "religious accommodation" under Title VII, but said nothing about "religious discrimination" claims, such as the one championed by Plaintiff. This over-reads the congressional statements. To begin with, the court notes that the House Report broadly states that "[n]othing in this bill shall be construed as affecting Title VII of the Civil Rights Act of 1964," without parsing between religious accommodation and religious discrimination claims. H.R. REP.

9

No. 103–88, at 7 (1993).

Moreover, the Supreme Court's recent decision in *Equal Employment Opportunity Commission v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015), illustrates the close link between religious discrimination and religious accommodation under Title VII.  Title VII prohibits employment discrimination on the basis of a protected trait.  It is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  This is often referred to as Title VII's "disparate treatment" provision.  Title VII defines "religion" to "includ[e] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [the] religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  Under this definition of "religion," an individual's "religious practice," just like his religious belief, is a protected trait "that cannot be accorded disparate treatment and must be accommodated" unless the employer demonstrates undue hardship.  *Abercrombie*, 135 S. Ct. at 2034.  In the absence of such a demonstration, a plaintiff may prove religious discrimination by "show[ing] that his need for an accommodation was a motivating factor in the employer's decision."  *Id.* at 2032.  In this way, unlike Title VII claims regarding other protected classifications such as race or gender, claims for religious discrimination are often bound up with the failure to provide a religious accommodation.  In short, there is no logical reason to believe that Congress, through the RFRA, intended to leave Title VII as the sole remedy for religious accommodation in federal employment, but somehow treated religious discrimination differently.

Although the Ninth Circuit has yet to address the issue, the Third Circuit and Eighth Circuit have both concluded that RFRA was enacted for the limited purpose of overturning *Smith*, and that Title VII remains the exclusive remedy for religious discrimination in federal employment.  In *Francis*, 505 F.3d 266, the plaintiff filed a RFRA lawsuit alleging that the Transportation Security Administration ("TSA") violated his right to free exercise of his religion by firing him for not cutting his dreadlocks, which were an expression of his sincerely-held

10

religious beliefs. The Third Circuit reviewed the legislative history and found that Congress did not intend RFRA to create an "end run" around Title VII's legislative scheme. *Id.* at 271. The Third Circuit concluded:

> It is not surprising that nothing in RFRA alters the exclusive nature of Title VII with regard to employees' claims of religion-based employment discrimination. Nothing in pre-*Smith* case law permitted an employee alleging employment discrimination based on religion to bypass Title VII's exclusive and comprehensive scheme. Accordingly, since RFRA was only enacted to overturn *Smith* and restore pre-*Smith* case law, the Senate Report merely clarifies that Congress did not intend RFRA to subsume other statutory schemes . . . . It is equally clear that Title VII provides the exclusive remedy for job-related claims of federal religious discrimination, despite Francis's attempt to rely upon the provisions of RFRA.

505 F.3d at 270, 272.

Similarly, in *Harrell v. Donahue*, 638 F.3d 975 (8th Cir. 2011), the plaintiff postal worker was a member of the Seventh Day Adventist Church. The plaintiff requested that he not be scheduled to work from sundown on Fridays to sundown on Saturdays as a religious accommodation. After numerous denied requests, the plaintiff stopped working on Saturdays regardless of whether he was scheduled to do so. He was eventually terminated. The plaintiff claimed that the postal service violated Title VII by failing to accommodate his religion, and that his termination amounted to religious discrimination. In addition, the plaintiff pleaded a violation of RFRA for infringement of his religious practice without a compelling interest. The Eighth Circuit reviewed RFRA's statutory language as well as its legislative history. It concluded that "RFRA was not intended to broaden the remedies for federal employment discrimination beyond those that already existed under Title VII. As a result, Harrell's claims under RFRA are barred because Title VII provides the exclusive remedy for his claims of religious discrimination." 638 F.3d at 982–84.

District courts uniformly have held that where a federal employee asserts a RFRA claim that addresses the same basic injury as a parallel claim asserted under Title VII, the RFRA claim is barred because Title VII provides the exclusive remedy. *See, e.g.*, *Tagore v. United States*, No. CIV. A. H–09–0027, 2009 WL 2605310, at *7–9 (S.D. Tex. Aug. 21, 2009), *aff'd in part, rev'd in part by* 735 F.3d 324 (5th Cir. 2013) ("Because plaintiff relies on the same facts to establish both that the defendants violated RFRA by substantially burdening the exercise of her sincerely held

11

religious belief, and that the defendants discriminated against her on the basis of her religious belief in violation of Title VII, the court concludes that the plaintiff's RFRA claim is 'not sufficiently distinct' from her Title VII claim to avoid preemption."); *Francis v. Ridge,* No. Civ. 2003/0039, 2005 WL 3747434, *3 (D. V.I. Dec. 27, 2005) (holding that "Title VII preempts Plaintiff's RFRA claim"); *Dorsey v. Roche*, No. C 00–21070 JW, Docket No. 53 at 13 (N.D. Cal. Oct. 1, 2002) (same)[2]; *Molotsky v. Henderson*, No. Civ. A. 98–5519,1999 WL 165683, *1 (E.D. Pa. Mar. 9, 1999) ("RFRA's text and legislative history do not suggest Congressional intent to affect the exclusivity of Title VII remedies to allow federal employees to bring an employment discrimination claim under that Act."). Plaintiff has not cited a single case permitting a RFRA claim for religious discrimination in federal employment, and the court is not aware of any.

Plaintiff's chief argument is that the Supreme Court recently characterized RFRA's purpose as far broader than re-establishing the pre-*Smith* interpretation of the First Amendment. *Burwell*, 134 S. Ct. 2751. In *Burwell*, the Supreme Court held that federal regulations implementing the Affordable Care Act violated RFRA and were therefore unenforceable. The regulations required closely-held corporations to provide health insurance coverage for methods of contraception that contravened the religious beliefs of the companies' owners. *Burwell* noted that in amending RFRA through the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 114 Stat. 803, 42 U.S.C. § 2000cc *et seq.*,[3] Congress deleted reference to the First

---

[2] At oral argument, Plaintiff expended considerable energy discussing an earlier decision in *Dorsey* that granted Defendant United States Air Force's motion to dismiss. Plaintiff asserts that the *Dorsey* Rule 12 decision demonstrates that the federal government did not argue that the RFRA claim should be dismissed because Title VII provided the sole remedy for Dorsey's religious discrimination claims. Plaintiff further argues that the United States Attorney's Office ("USAO") represented the Defendant in *Dorsey* as well as Defendant in this case, and that this court should attach legal significance to the fact that the USAO changed its legal position for purposes of the defense in the instant case. This is a stretch on many levels. First, the court does not know what the particular Assistant United States Attorney argued in the *Dorsey* Rule 12 motion, and refuses to speculate. Second, it is crystal clear that at summary judgment, the defense in *Dorsey* argued, as it does here, that Title VII prevented plaintiff's RFRA claim from proceeding. *Dorsey*, No. C 00–21070 JW, Docket No. 53 at ECF 13 (N.D. Cal. Oct. 1, 2002). Finally, the court is not aware of any legal doctrine that prohibits the USAO from taking a different legal position in this case than it did in *Dorsey* (which it did not).

[3] As explained in *Burwell*, 134 S. Ct. at 2761–62, as enacted in 1993, RFRA applied to both the Federal Government and the States, but the constitutional authority invoked for regulating federal and state agencies differed. In its application to federal agencies, RFRA is based on the

12

Amendment, and went further, providing that the exercise of religion "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc–3(g). *Burwell* found that it was "not possible to read these provisions as restricting the concept of the 'exercise of religion' to those practices specifically addressed in our pre-*Smith* decisions." 134 S. Ct. at 2772.

There is no question that the majority opinion in *Burwell* interprets RFRA as "providing very broad protection for religious liberty." *Id.* at 2767. However, it is also clear that *Burwell* did not address the relationship between RFRA and Title VII in federal employment discrimination. The Court expressly noted that its holding was "very specific," and framed its decision as finding that enforcement of the Affordable Care Act's contraceptive mandate against the objecting closely-held for-profit corporations was unlawful under RFRA, where the system available to religious nonprofits to object to the contraceptive mandate constituted an alternative that achieved all of the Government's aims while providing greater respect for religious liberty. *Id.* at 2759–60.

Plaintiff contends that *Burwell* found that RFRA applies in the "employment context." This is word play. *Burwell* did not address religious discrimination claims by employees. It involves "employment" only to the extent that it relates to an employer's obligations to provide certain kinds of health insurance benefits. *Burwell* in no way grapples with *Brown*'s prior holding that Title VII provides the exclusive remedy for federal discrimination in employment. Plaintiff also cites to passages in *Burwell* that allegedly support that RFRA applies to "employees." Opp.

---

enumerated power that supports the particular agency's work, but in attempting to regulate the States and their subdivisions, Congress relied on its power under Section 5 of the Fourteenth Amendment to enforce the First Amendment. *City of Boerne v. Flores*, 521 U.S. 507, 516–17 (1997). In *City of Boerne,* however, the Supreme Court held that Congress had overstepped its Section 5 authority because "[t]he stringent test RFRA demands" "far exceed[ed] any pattern or practice of unconstitutional conduct under the Free Exercise Clause as interpreted in *Smith*." *Id.* at 532–34.

Following *City of Boerne,* Congress passed the RLUIPA. That statute, enacted under Congress's Commerce and Spending Clause powers, imposed the same general test as RFRA but on a more limited category of governmental actions. *Cutter v. Wilkinson*, 544 U.S. 709, 715–716 (2005). RLUIPA amended RFRA's definition of the "exercise of religion." *See* § 2000bb–2(4) (importing RLUIPA definition). Before RLUIPA, RFRA's definition made reference to the First Amendment. *See* § 2000bb–2(4) (defining "exercise of religion" as "the exercise of religion under the First Amendment").

at 3–4. These passages, however, address whether RFRA applies to corporations, such as the three plaintiff companies. 134 S. Ct. at 2767–68. Similarly, Plaintiff points to a passage that addresses a concern by the dissent that businesses have used religious belief as a cloak for discrimination on the basis of race or sexual orientation. Opp. at 4, citing 134 S. Ct. at 2783 (addressing dissenting opinion at 134 S. Ct. at 2804–05). However, upon close reading, this exchange cannot fairly be interpreted to mean that *Burwell* effectively has overturned *Brown*. In sum, although the *Burwell* majority opinion clearly stands for the proposition that RFRA provides broad protection for religious freedom, any dictum that can be extracted from *Burwell* about RFRA's relationship to Title VII amounts to tea leaves at best.

Finally, Plaintiff relies on a document entitled "Guidelines on Religious Exercise and Religion in the Federal Workplace," issued by The White House, Office of the Press Secretary, dated August 14, 1997 ("Guidelines").[4] The Guidelines discuss Title VII, the Free Exercise Clause of the First Amendment, and RFRA as distinct obligations applicable to federal employment. Opp. at 4–5. As an initial matter, neither party cites any cases regarding the weight that should be accorded to the Guidelines, nor has the court found any. The Guidelines do not clearly identify their source of authority. As far as the court can determine, the Guidelines were drawn up by a committee involving various coalitions, and were issued by the Clinton Administration Office of the Press Secretary. They are not an Executive Order. They also are not regulations or sub-regulatory guidance by an agency, such as the Equal Employment Opportunity Commission, which is tasked with the authority "to issue, amend, or rescind suitable procedural regulations to carry out the provisions" of Title VII. 42 U.S.C. § 2000e–12(a). In short, the Guidelines do not constitute an agency's interpretation of a statute typically granted some degree of deference.[5]

---

[4] Office of the Press Secretary, White House, Guidelines on Religious Exercise and Religious Expression in the Federal Workplace (Aug. 14, 1997), https://clinton2.nara.gov/WH/New/html/19970819–3275.html.

[5] The courts have established a framework for considering the proper level of deference to be given to an administrative agency interpretation of a statute or a regulation that the agency is charged with enforcing and implementing. The starting point to determine the appropriate level of deference, if any, is the language of the delegation of authority from Congress. *Gonzales v.*

On their face, the Guidelines are intended for internal use. Section 3 of the Guidelines state: "These Guidelines shall govern the internal management of the civilian executive branch. They are not intended to create any new right, benefit, or trust responsibility, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies, its officers, or any person." Guidelines at § F(3). By their own terms, the Guidelines do not confer litigable rights, nor do they address the availability of judicial remedies for federal employees for alleged violations of RFRA. In light of the foregoing, the Guidelines are not entitled to deference in determining the question of whether RFRA provides a separate avenue for challenging religious discrimination in federal employment.

In conclusion, upon review of RFRA, its legislative history, and cases interpreting RFRA, the court finds that Title VII remains the exclusive remedy for religious discrimination in federal employment. Plaintiff's RFRA claim is therefore dismissed.

### C. Whether Plaintiff May Seek Monetary Damages for His First Amendment Claim

Plaintiff brings all of his claims against Jewell in her official capacity as head of the Department of the Interior. Defendant contends that Plaintiff may not seek to recover monetary damages for his First Amendment claim against Jewell because the United States has not waived its sovereign immunity.[6] MTD at 6–7.

"In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity . . . ." *United States v. Testan*, 424 U.S. 392, 400 (1976). A suit for damages against federal officers or employees in their official capacity is essentially a suit against the United States and is therefore barred by sovereign immunity absent statutory consent. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Moreover, "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Mitchell*, 445 U.S.

---

*Oregon*, 546 U.S. 243, 258 (2006). The Guidelines do not appear to have been created pursuant to any delegation of Congressional authority.

[6] Plaintiff may seek monetary damages against Jewell under Title VII. *West v. Gibson,* 527 U.S. 212, 217 (1999).

15

535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).  The party who sues the United States bears the burden of pointing to such an unequivocal waiver of immunity. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) (citing *Cole v. United States*, 657 F.2d 107, 109 (7th Cir. 1981)).

The United States has not waived its sovereign immunity for actions seeking damages for constitutional violations.  *See Arnsberg v. United States,* 757 F.2d 971, 980 (9th Cir. 1985) (holding plaintiff's damages claim for violation of his Fourth Amendment rights against the United States was barred by sovereign immunity); *Holloman*, 708 F.2d at 1401–02 (rejecting claimant's argument that sovereign immunity did not apply to his due process claim for damages when the federal defendants were being sued solely in their official capacity).

Plaintiff fails to address Defendant's argument and responds that he does not seek monetary damages from Jewell in her *individual* capacity.[7]  Opp. at 7 (emphasis added).   In his briefing, he states that he is seeking declaratory and injunctive relief, but does not clarify whether he seeks monetary damages for his First Amendment claim.  *Id.*  However, in his FAC, Plaintiff alleges that as a result of Defendant's violation of the First Amendment, he "suffered harm in the form of past and future lost wages and benefits and other pecuniary loss, including, but not limited to, costs associated with finding other employment."  FAC at ¶ 78.

Plaintiff sues Defendant in her official capacity.  FAC at ¶ 2.  Plaintiff's constitutional claim for damages is barred by the doctrine of sovereign immunity.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's First Amendment claim is dismissed with prejudice to the extent that it is based on discrimination in his federal employment due to his religious beliefs or activities.  **By July 25, 2016,** Plaintiff may amend his complaint if he is able to assert a constitutional claim that is distinct from his Title VII claims.  Such a claim may not seek monetary damages.

---

[7] Plaintiff previously sought damages against Jewell and other dismissed defendants in their individual capacities under a *Bivens* claim, but withdrew this claim for relief in his First Amended Complaint.  *See* FAC.

16

Plaintiff's Religious Freedom and Restoration Act claim is dismissed with prejudice.

The parties shall appear for a further Case Management Conference on August 31, 2016 at 1:30 p.m., and shall file an updated joint case management statement by August 24, 2016.

**IT IS SO ORDERED.**

Dated: July 11, 2016

_____
Donna M. Ryu
United States Magistrate Judge

17